THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY et al.

v

THE LONG DOCK COMPANY et al.

In September, 1867, certain trustees of the New Jersey Railroad and Transportation Company and of the Long Dock Company agreed to convey to the former certain lands and water rights, excepting therefrom one hundred and fifty-eight six-hundredths in value of the whole tract, which were to be set off in severalty and conveyed to the latter, and, further, that if either of the parties should, after the division, be dispossessed of any part of the tract so conveyed to it, or should be put to any expense in defending its title thereto or in extinguishing any outstanding title or claim against it, then the other party should bear its share of such loss and expense according to its proportionate interest in the entire property. The deeds were executed and delivered in October, 1867. To the greater part of the premises conveyed to the New Jersey Railroad and Transportation Company, the state had paramount title as riparian owner, and in 1868 the joint companies (the Delaware and Rari-

tan Canal Company, the Camden and Amboy Railroad and Transportation Company and the New Jersey Railroad·and Transportation Company), which were consolidated and thus succeeded to the title of the New Jersey Railroad and Transportation Company in the premises, and whose lessee the Pennsylvania Railroad Company is, obtained the state's title to the premises, by an act of the legislature which prohibited them from reclaiming or utilizing any part of said premises until the compensation stipulated in the act had been paid. The consideration was afterwards fixed at $500,000, which the joint companies paid. The complainants were also put to expense in defending their title to part of the premises against a claim by one Winants, which was subsequently abandoned by his voluntary discontinuance of the suit.—*Held*, that the covenant above quoted contemplated and included the state's paramount right to the lands under water, and that the defendants are consequently liable for the one hundred and fifty-eight six-hundredths part of the $500,000, with interest thereon from 1868, and also liable for the one hundred and fifty-eight six-hundredths part of the cost of defending the Winant's claim.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. J. B. Vredenburgh* and *Mr. J. D. Bedle*, for complainants.

*Mr. R. Wayne Parker* and *Mr. Cortlandt Parker*, for defendants.

THE CHANCELLOR.

This suit is brought to establish and enforce the liability of the defendants, the Long Dock Company, to pay to the complainants part of certain moneys paid by the United New Jersey Railroad and Canal Company to perfect and defend its title to land in Jersey City, part of the Harsimus cove property conveyed to the New Jersey Railroad and Transportation Company by Moses Taylor and Peter Bentley, trustees for the Long Dock Company and others, in pursuance of an agreement made September 10th, 1867. By that agreement, which was made between Messrs. Taylor and Bentley, trustees for the owners of the Harsimus cove property, of the first part, the beneficial owners of the property, of the second part, and the New Jersey Railroad and Transportation Company, of the third part, it was recited that the trustees held title, in trust for the parties of the second part, of a certain tract of land and land under water

and water rights in Jersey City, known as the Harsimus cove property, excepting some parcels previously conveyed therefrom, and they thereby agreed to convey to the railroad company all those lands, lands under water and water rights, excepting the parcels previously conveyed and excepting also one hundred and fifty-eight six-hundredths parts in value of the whole tract, after excepting the parts previously conveyed, which one hundred and fifty-eight six-hundredths parts were the share of the Long Dock Company therein, and were to be set off to that company in severalty accordingly, along the northerly side of the tract, and to be separated from the residue by a line to be drawn through the whole tract, easterly and westerly, parallel with Pavonia avenue.

There was a provision in the agreement that the two companies should agree upon the partition, and that if they could not agree there should be an arbitration. Also that if the division line should not fall in the middle line of a street or block, but should cut a tier of lots or a street unequally, the arbitrator or arbitrators should have power to locate the line at the nearest middle line and award a pecuniary allowance to the party whose land might be taken for that purpose, the allowance being rated at the price of $700,000 for the whole tract. It was also thereby agreed that in locating the division line, the title of the whole tract should, for the sake of convenience of division, be deemed equally good and valid, and that if at any time afterwards either of the companies should be dispossessed of any portion of the tract conveyed to it or its assigns by virtue of the agreement, or should be put to any cost or expense in defending its title thereto, or in extinguishing any outstanding title or claim against it, then the other party should bear its proportion of such loss and expense according to its proportion of interest in the entire property, which should be a lien on the part set off and conveyed to it. The agreement further provided that the property should be conveyed at a time and place therein designated, with all the right, title and interest of the trustees as riparian owners, or as owners of the Budd grant (a grant from the state for land under water, part of which was part of the property), or, otherwise, to fill in

and reclaim lands under water, build docks, wharves and piers, or in any other manner, and whether held by the trustees or by any other party or parties for their use.    The price of the property to be conveyed to the railroad company was $515,666.66. The partition was made by arbitrators, under the agreement, and it was agreed between the companies that the division line should be the middle of South Second street, and that the Long Dock Company, which thus obtained more than its share, should, for the excess, pay the railroad company $72,500 in cash on the delivery of the deed.    The conveyances were made by deeds dated October 1st, 1867.    In the division the arbitrators assigned to the Long Dock Company nearly one-half of that part of the Budd grant which lay within the boundaries of the property. The land divided was almost all of it under tide-water.    To a great part of that which was conveyed to the railroad company, the state had paramount title.    The Camden and Amboy Railroad and Transportation Company, the Delaware and Raritan Canal Company and the New Jersey Railroad and Transportation Company (since known as the joint companies) were consolidated in interest, by agreement, validated by act of the legislature early in 1867, and the Pennsylvania Railroad Company subsequently became their lessee and took possession, under the lease, at midnight on the 30th of November, 1871.    Under the lease it became vested with the rights of those companies, and is entitled to the benefit of the covenant in question in this suit in place and in the right of the New Jersey Railroad and Transportation Company.    By act of the legislature of March 30th, 1868 (P. L. of 1868 p. 551), wherein it was recited that the joint companies required more room for depot, storage and other railroad and canal purposes at Jersey City, and to that end had purchased, in the name of the New Jersey Railroad and Transportation Company, all private right, title, interest and property in the lands under water known as the Harsimus cove property, lying between the centres of South Second and South Seventh streets, and extending from the upland or shore to the deep waters of the Hudson river, the right and title of the state to the land lying between high-water mark on the west, the deep water

10

of the Hudson on the east, the centre of South Second street on the north, and the centre of South Seventh street on the south, excepting thereout that portion of the Budd grant then owned by the joint companies, was granted to those companies, their successors and assigns, to hold them in the name of the New Jersey Railroad and Transportation Company or otherwise, on payment on or before the 1st day of January then next, of such sum or sums of money as should be fixed by the attorney-general and three commissioners (to be appointed by the supreme court on the application of the attorney-general or the companies, on notice) as the just and equitable compensation to the state for the lands thereby granted, surrounding the Budd grant. The act also provided that until such compensation should be paid it should not be lawful for the companies to improve, fill in, reclaim or enjoy the lands under water thereby granted. The compensation was fixed, under the provisions of the act, at $500,-000 (the award was dated December 22d, 1868), and has been paid by the joint companies. They gave their bond to the state for the money, with interest from December 31st, 1868, and subsequently paid the bond. They have frequently demanded payment of the proportion, one hundred and fifty-eight six-hundredths, of the money, which, they insist, the Long Dock Company is bound to pay under the agreement, but the latter has never paid it or any part of it.

The agreement provides that in the partition, and for the purposes thereof, the title of the whole tract shall, for the sake of convenience of division, be deemed equally good and valid. To part of the property—that within the lines of the Budd grant—there was an absolute and indisputable title   All the property was regarded as being held by such a title. The agreement further provides that if at any time after the division of the property between the companies, either of the companies should be dispossessed of any portion of the tract conveyed to it or its assigns by virtue of the agreement, or should be put to any cost or expense in defending its title to it, or in extinguishing any outstanding title or claim against it, the other party should bear its

United Companies *v.* Long Dock Company.

proportion of such loss and expense, according to its proportion of interest in the entire property.

The main question for decision is whether the title of the state, at the time of the division, to land under water, set off to the railroad company, is to be regarded as an outstanding title within the meaning of the agreement. It is urged, on behalf of the defendants, that the agreement had reference, in the language under consideration, only to outstanding claims of title by private persons as riparian owners or otherwise. But the language, obviously, does not necessarily require such a construction. It is as general as it could be. It embraces, in terms, every outstanding title or claim, and if the state had a title or claim, the terms embraced. it. The state not only had a title or claim against the land under water, not included in the Budd grant, but it had a paramount title, a sovereign claim. It is urged, however, on the part of the defendants, that that claim or title was liable to be extinguished by the riparian owner's right of reclamation which existed by the common law of the state. That is, that the state's claim or title might be extinguished by occupancy of the property by the riparian owner. Still, the right of the state existed until extinguished in that way or by grant. It cannot be doubted that the paramount title of the state was within the terms of the agreement.

But it is urged that, though within the terms, it was not within the meaning of the parties, and *Cooper* v. *Bloodgood, 5 Stew. Eq. 209*, is cited. But that case is not in point. The query is, indeed, there suggested, whether a riparian owner, who, in conveying his property, includes the land between high and low-water marks, to which he has no title, will, in the absence of an express warranty to that effect, be held by the usual covenants, to have warranted against the notorious, paramount and sovereign title of the state, to such land under water. But, in that case, which was a suit for foreclosure of a mortgage for purchase-money of land so conveyed as, by its description, to include the shore also, it was merely held that, under the circumstances, the existence of the paramount title of the state constituted no defence in that suit. The question here is whether,

where the title to land is, for the purposes of division, assumed
to be perfect, and there is an agreement for indemnity against
any outstanding title or claim, the admitted paramount sovereign
title of the state is to be regarded as not within the meaning of
the parties.   It is to be borne in mind that only part of the
land conveyed to the Long Dock Company was within the limits
of the Budd grant, and there was other land under water con-
veyed to it, to which the state had paramount title up to the
time of the conveyance to the Long Dock Company.   On the
making of that conveyance, and the consequent acquisition of
that other property by that company, the state's title to that
other property was at once extinguished by force of existing
legislative provisions of a general character, in favor of that
company, in effect releasing that title to the land the company
should acquire.   Obviously, that fact in nowise affects the deci-
sion of the question under consideration, either the one way or
the other.   The agreement provides, as before stated, for the
conveyance, with the property, of all the right, title and interest
of the trustees, as riparian owners, or as owners of the Budd
grant, or otherwise, to fill in and reclaim lands under water,
build docks, wharves and piers, or in any other manner.   And
by each of the deeds, the land is conveyed, in fee, to the grantee,
with all the right, title and interest of the grantors in the land
under water, and all their right to fill in, reclaim or in any man-
ner improve the lands and those under water, and all their right
to build docks, wharves and piers within the bounds of the
premises granted.   The peculiar character of the title to the
property therefore was well known to the parties, and it was
well understood that the state had paramount title.   Though
that title might have been extinguished by the process of recla-
mation, yet it was within the power of the state, at any time
before reclamation, effectually to assert and compel recognition
of its right.   The act of 1868, before referred to, prohibits
reclamation before payment of compensation.   There is nothing
to justify the conclusion that the paramount title of the state
was not within the intention of the parties, as it was within the
meaning of the language they employed to express their inten-

tion. It is said that the act just referred to was procured by the joint companies, and that they, therefore, are responsible for the prohibition, and that it was and is attributable to them. But the act is a public act, and deals with and disposes of property which undoubtedly and undeniably was the property of the state, and which it had the power to sell. And it also, of course, had the right to protect its interest therein. There is no ground for entertaining a suggestion of bad faith on the part of the joint companies in the matter, and, indeed, no such suggestion is made.

It is urged, however, that they sought and obtained other very important and valuable advantages in connection with the extinguishment of the title of the state, as appears from the act itself, and that those advantages may be justly regarded as part of that for which the $500,000 were paid. But it is clear that those advantages did not enter into the consideration of the amount of compensation to increase it. The compensation appears to have been fixed at a lower amount than it otherwise would have been because of the uses (beneficial to the public) to which the land was to be devoted. The act directed that in fixing the compensation, regard should be had to the fact that the companies owned part of the Budd grant; the purposes to which the land was to be put, and the consideration that the state ought to favor them in their enterprise. By the report of the commissioners (who were the attorney-general, ex-Governors Olden and Haines and Charles E. Elmer, Esq.) it appears that they fixed the amount after viewing the property and investigating its nature and condition, and those of the various rights claimed thereto, and after considering them, and hearing and considering not only the statements of the parties interested and of engineers and scientific persons and others having knowledge of the subject matter, but also the arguments of counsel on behalf of the united companies and others claiming to be interested; and that in fixing the amount, they had regard to the ownership by the companies of part of the Budd grant, to the purposes of the grant, the value of which was under consideration and which they were to estimate, the situation of the land and the inducements the state ought to hold out to the

grantees for making the proposed improvements. It appears also, by the evidence, that the Long Dock Company had notice of the sessions of the commissioners to consider the matter, and were, in fact, represented by counsel there. But however. that may have been, it was the state, the owner of the paramount title, that declared on what terms—the receipt of proper compensation—it would extinguish or release that title, and provided the means of fixing the amount of compensation. The whole transaction was public, and there appears to be no ground whatever, for any complaint as to any of the steps taken therein, and the defendants are bound by the price which was fixed.

The complainants also make a claim for indemnity in regard to a claim made by Garret E. Winants, to a part of the property conveyed to the railroad company under the agreement. That claim for indemnity may be readily disposed of. It appears that Winants was the owner of adjoining property, and by suit in equity in the United States circuit court for the district of New Jersey, made claim to a small part of the property conveyed to the railroad company under the agreement. The bill was filed against the joint companies July 24th, 1869. Answer was filed by the defendants in December following. There appears to have been an arrangement entered into between the Pennsylvania Railroad Company and Winants for the purchase by the latter of his adjoining property and conveyance thereof to it at a future day, and there was to be a lease from him to it for the property in the meantime. The arrangement was fully carried out. The agreement provided that that arrangement was not to affect the claim in suit or the suit itself. But it appears that in May, 1879, the bill was dismissed on motion of Winants's own solicitor. The order of dismissal (consented to by Winants himself) states that the complainant has abandoned all further prosecution of the suit. The expense of defending that suit is within the agreement which is the foundation of this suit. There will be a decree for the complainant for the proportion, one hundred and fifty-eight six-hundredths parts of the $500,000 and the lawful interest thereon from the date of the bond given by the joint companies to the state, December 31st, 1868, and also

for the amount of the cost of defending the Winants suit. And to secure payment thereof, the complainant is entitled to a decree that those moneys are, with the costs of this suit, a lien upon the property conveyed to the Long Dock Company under the agreement, saving the rights of any of the defendants whose equities as to the land or any part of it are for any reason superior to that of the complainant. Whether any of them have any such equities, and if any, to what extent, will be the proper subject of a reference, as will also the matter of the amounts due to the complainants from the Long Dock Company.